E. A. HALL *v.* CHARLENE ROYCE ET AL.
MARTHA HALL b. n. f. *v.* CHARLENE ROYCE ET AL.

February Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 12, 1937.

100.

*Clayton H. Kinney* for the defendant Royce.

*Wm. R. McFeeters* for the defendant Simpson.

*Sylvester & Ready* for the plaintiffs.

Powers, C. J. We have here two tort actions, one for personal injuries suffered by Martha Hall, a minor, and another for expenses incurred by her father, resulting from an automobile accident. The cases were tried together in the court below, verdicts were returned for the plaintiffs against both defendants, judgments were entered accordingly, and the defendants excepted.

Martha Hall was a gratuitous guest and passenger in an automobile driven by the defendant, Charlene Royce, which collided with a car driven by the defendant Simpson. The accident happened on the paved highway between the village of Milton and the city of St. Albans, in the early morning of June 18, 1935. A party of St. Albans high school students, in the two cars referred to, were returning from a class picnic at Basin Harbor, having also attended a dance at Malletts Bay. When the leading car, driven by defendant Simpson, had reached a point about a mile and a half north of the village of Milton, a ditched car was observed on the right-hand side of the road. Simpson "drifted" by it and stopped his car at a point about a hundred feet north of it, with his right wheels slightly off the cement. He intended to go to the relief of the ditched car, if help was needed. His car remained at rest with almost all of it on the cement for a brief time, but before he or any of his party could get out of the car, the Royce car came along and ran into it. The evidence was conflicting as to whether Simpson's car was at rest or moving at the time of the collision. He testified that he stopped only for a few seconds, and then, discovering the approach of the Royce car, he put his car into gear and moved ahead. He insisted that he had proceeded from twenty to twenty-five feet and had attained a speed of from twelve to fifteen miles an hour, when the collision took place.

The evidence of the defendant Royce tended to show that when she rounded a curve some seven hundred and fifty feet south of the place of the collision, she saw the car ahead, realized what it was, and thought it was in motion. She was then moving at the rate of about forty miles an hour, and she continued at that speed, driving on the right-hand side of the pavement, until she was within about a hundred feet of the Simpson car, when she discovered that that car was standing still. She then applied her brakes and turned her car to the left; but it was too late.

104

The cars came together, and Martha Hall was severely injured.

Each of the defendants moved for a verdict. These motions were overruled and the defendants excepted.

So far as the defendant Royce is concerned, it is quite apparent that the suit must fail, unless there was evidence fairly and reasonably tending to show that she was grossly or wilfully careless. For of such, alone, consists the right of action of a gratuitous guest. P. L. 5113. Nor does her father stand any better here, for his right of action, if he has any, while independent of hers, in some respects, see *King* v. *Viscoloid Co.*, 219 Mass. 420, 106 N. E. 988, Ann. Cas. 1916D, 1170, is founded upon the same breach of duty as that sued on by the minor. And if the latter cannot recover, the parent cannot. *Thompson* v. *United Laboratories Co.*, 221 Mass. 276, 108 N. E. 1042, 1043; *Reagan* v. *Superb Theater, Inc.*, 220 Mass. 259, 107 N. E. 984; *Central of Ga. R. Co.* v. *Robins*, 209 Ala. 12, 95 So. 370; *Callies* v. *Reliance Laundry Co.*, 188 Wis. 376, 206 N. W. 198, 42 A. L. R. 712, 715; *Shields* v. *Audette*, 119 Conn. 75, 174 Atl. 323, 94 A. L. R. 1206, 1208, and note.

The Royce motion for a verdict challenges the sufficiency of the evidence to warrant a verdict against her on the ground of gross negligence.

Such negligence was adequately defined in *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 531, 162 Atl. 373, 86 A. L. R. 1139, and in *Dessereau* v. *Walker,* 105 Vt. 99, 101, 163 Atl. 632. For present purposes, it is enough to say that gross negligence is equivalent to a failure to exercise a slight degree of care, even.

It has been found by experience that the decided cases are of small assistance in determining whether the evidence in a given case tends to show gross negligence, and that each such case must stand mostly on its particular facts, considered in the light of accepted principles of law. *Rich* v. *Hall,* 107 Vt. 455, 459, 181 Atl. 113.

It must be conceded that when an automobile driver accepts as his guest a nonpaying passenger, he assumes a certain responsibility for the safety of that guest. Under common law principles, that responsibility requires that the machine shall be handled as a careful and prudent man would handle it, having regard for all attending circumstances. The statute above referred to relieves the driver of a part, but not all, of that re-

sponsibility. He is still required to have some regard for the safety of his guest, and must answer in damages if he fails to exercise a slight degree of care in the operation of the car, and injury proximately results therefrom to his guest. Reasonable speed and proper control are always for consideration. What is reasonable speed varies with the circumstances, of course. If nothing but speed was here for consideration, it could not be said that forty miles an hour was, as a matter of law, negligence. But here there are other circumstances that must be considered. It was in the night. The visibility was not very good, though the defendant Royce saw the car ahead and knew what it was. She was driving a car equipped with sufficient lights and adequate brakes. The cement road was eighteen feet wide, nearly straight, and rising toward the north on a four and one-half per cent grade. From a point seven hundred and fifty feet away from the point of collision, she drove at a speed of forty miles an hour, knowing all the time that she was approaching nearer and nearer to a car on her side of the road; and she made no effort to check the speed of her car or to do anything else to avoid an accident. Indeed, she must have made some active effort to sustain her speed, for if she had not, her car would have slowed down on the grade. She says on the stand that she did not slacken her speed because she thought the car ahead of her was moving and that she took a chance of the road being clear. She does not say that there was any particular circumstance that deceived her into thinking that the Simpson car was in motion. Therefore, she gets no assistance from *Hatch* v. *Daniels,* 96 Vt. 89, 117 Atl. 105, where special circumstances calculated to deceive a careful man were shown. As we have seen, she made not the slightest attempt to check her speed or bring her car under control until it was too late to avoid a collision. Conceding that she then did all she could to avoid an accident does not excuse her. Ordinary care required her to have her car under reasonable control when she was approaching another car going in the same direction, and presumably having equal rights in the highway. *Williamson* v. *Clark,* 103 Vt. 288, 291, 153 Atl. 448. In such a case, the speed of the approaching car is the ''critical element'' in the matter of control, *Id.* The very fact that this defendant could not avoid the collision when she tried, warrants an inference that she was going too fast, following too close, or

made no proper effort to avert the accident, *Id.* So ordinary negligence is sufficiently indicated. But gross negligence is something more culpable, and, as involved here, depends upon the regard for the plaintiff's safety manifested by what she did or omitted to do before she applied her brake as above stated. All she needed to do to avoid the chance of an accident was to take her foot off the accelerator or otherwise slow down her car, or turn to the left soon enough and far enough to clear the obstruction in the road. She had a right to assume that the Simpson car would not obstruct the highway unlawfully, *Steele* v. *Fuller,* 104 Vt. 303, 308, 158 Atl. 606, but she had no right to rely upon this assumption after she discovered it was there in the road, and in her lane of travel.

The case is a close one, but we think it cannot be said that a jury, acting reasonably, could not find that this defendant was guilty of gross negligence. The case comes within the spirit of *Dessereau* v. *Walker,* 105 Vt. 99, 102, 163 Atl. 632, and *Hunter* v. *Preston,* 105 Vt. 327, 338, 166 Atl. 17.

The cases against Simpson are of a different character. They involve questions of ordinary negligence, only. That the evidence against him tended to make a case of negligence is clear enough. P. L. 5110, XIII, provides that a person shall not park or leave standing any vehicle, whether attended or unattended, upon the paved part of any highway, so as to interfere with traffic on such highway, except in certain circumstances not here existing. By his own testimony, Simpson was guilty of a violation of this statute, and this violation gave rise to a rebuttable presumption of negligence, *Palmer* v. *Marceille,* 106 Vt. 500, 506, 175 Atl. 31; *Shea* v. *Pilette,* 108 Vt. 446, 189 Atl. 154, 155, the effect of which was to shift to him the burden of evidence on that question. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt. 6, 192 Atl. 184. The statute is a safety statute, which Simpson was bound to observe, though his purpose in stopping there was a worthy one. To be sure, he had a right to assume that other drivers with equal rights in the road would observe the law, and if the question here had arisen between him and the other driver, it might have been difficult for the latter to have recovered any damages suffered by the collision. But the negligence of that driver was not imputable to her guest, and the jury was warranted in finding that this defendant was proxi-

mately negligent and there was no error in overruling his motion for a verdict.

The defendants disagreed about the Simpson car being in motion when the Royce car hit it. The defendant Royce and the plaintiff, Martha Hall, testified that it was not in motion; while Simpson testified that it was in motion and, as we have seen, had proceeded twenty or twenty-five feet when the collision took place.

The defendant Royce testified that on the same night after the accident, Simpson told her that he tried to get his car in motion, but couldn't; that he tried to get his car into gear, but couldn't. William Royce, her father, testified to the effect that Simpson told him that he tried to get into gear and get away, but did not succeed; and that on the day following the accident, he saw a report that Simpson had made out wherein it was stated that his car was stopped, which report differed from the one used in evidence. Simpson, in effect, denied these statements.

 The charge of the court made no mention of these admissions, to which the defendant Royce excepted. No question is made of her right to the benefit of this exception, so we give that matter no attention.

The only answer made by the plaintiff to this exception is that the point of it was not made plain to the court. To show just what happened, we quote what counsel said to the court at the close of the charge: ''The defendant Royce excepts to the charge as given and to the failure of the court to charge on the effect of certain admissions in evidence made on the part of the defendant Simpson, and I refer to statements which the evidence shows were put into the first report of the accident to the motor vehicle department, and also to statements which he made to Charlene Royce and to William Royce. We say that the court should tell the jury that the evidence may be used by them to find the fact to be as the evidence shows he then stated it, and also as impeachment of his testimony here in court.'' The court did not further charge the jury.

 It is well understood that a court is entitled to know what is excepted to and why it is being excepted to. But an exception must be treated with fairness to the exceptor as well as to the court. It must all be made reasonably plain to the court, but counsel need go no further than that. Did this excep-

tion fairly direct the attention of the court to the claimed error? That is the test. *In re Chisholm's Will*, 93 Vt. 453, 456, 108 Atl. 393; *Fitzgerald* v. *Metropolitan L. Ins. Co.*, 90 Vt. 291, 308, 98 Atl. 498. The only evidence in this record to which counsel could have referred was that hereinbefore recited. There could be no mistake about that. The reason why it was claimed to be error to omit to charge its effect was distinctly specified. The court should have understood it, and we have no doubt that it did understand it.

The law is as the defendant Royce claims it to be. When a party makes an admission at variance with his testimony, it is admissible, not only to impeach him, but also as evidence that the fact is as admitted. *Melendy* v. *Bradford*, 56 Vt. 148, 153; *Robinson* v. *Leonard*, 100 Vt. 1, 5, 134 Atl. 706; *Blanchard* v. *Paltiel*, 106 Vt. 510, 513, 175 Atl. 226.

It was error for the court to fail so to instruct the jury. *Mullany* v. *Goss Co.*, 97 Vt. 82, 87, 122 Atl. 430.

*Judgments reversed and causes remanded.*